THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* TOMÁS COLLAZO VERDEJO, Defendant and Appellant.

No. 6338. Argued April 14, 1937.—Decided April 30, 1937.

*E. H. F. Dottin* for appellant. *R. A. Gómez, Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Carmen Rodríguez Acevedo filed in the Municipal Court of San Juan, Second Section, three complaints against Tomás Collazo Verdejo, for violations of the Act to regulate the practice of Dental Surgery and later requested the dis-

missal of the charges brought, filing in each case a motion in which it is stated:

"That subsequently to the filing of the complaint she has decided not to prosecute this case because she has no interest in the same."

Each of the motions were decided by said Municipal Court of San Juan, Second Section, on August 5, 1935, as follows:

"In view of the above motion and the merits thereof, the Court orders the dismissal of the prosecution, upon payment of the costs."

At this stage, on December 11 of the same year, 1935, Arturo Bernard and Marcelino Santiago, detectives of the Insular Police, filed in the Municipal Court of San Juan, First Section, three separate complaints against Tomás Collazo Verdejo, charging him with the same three violations of the Act to regulate the practice of Dental Surgery of which Carmen Rodríguez Acevedo had accused him.

In order to fix the nature of the violations in question we will copy from the first complaint the following:

"That on April 1, 1935 . . . . . at Santurce, San Juan . . . . . the said defendant Tomás Collazo Verdejo . . . . . wilfully, illegally, and maliciously and pretending to practice Dental Surgery, examined the mouth of Carmen Rodríguez Acevedo with the purpose of making a set of false teeth—a bridge—for her, and extracted two of her upper teeth for a price; all of which he performed without being authorized to practice the profession of dentist in Puerto Rico."

The acts charged in the second and third complaints refer to the extraction of three molar teeth and one tooth, and three molar teeth, respectively on the 28th and the 21st of March 1935.

In the three proceedings thus brought in the Municipal Court of San Juan, First Section, the defendant appeared and filed three motions to dismiss the prosecution. They are identical, and it will therefore be sufficient to transcribe the substantial part of one of them, thus:

"That on the same facts which gave rise to the filing of this complaint and which occurred on March 28, 1935, the defendant herein was accused for the same offense before the Municipal Court of San Juan, Second Section, and the case, No. 43641, was disposed of on August 3, 1935, in accordance with the provisions of section 446 of the Code of Criminal Procedure, which expressly prohibits another prosecution for the same offense."

The court denied the motions. It found the defendant guilty and the latter appealed to the District Court of San Juan. By a stipulation of the parties which was approved by the court, the three cases were called for trial to be heard together on March 10, 1936. Thereupon counsel for the defendant said, "There are three motions to quash." And the court decided: "Even admitting as true the allegations made, the case is of such a nature, that it can not be compromised and the order of the court dismissing the prosecution would be null, because this is not a case which can be compromised. It must be a case in which damages may be recovered. This case involves a law of a public nature which prohibits the unlawful practice of dentistry and the fact that the defendant has paid the person to whom he rendered the services does not absolve him from violating the law. It would be the same if a person who is not authorized to practice medicine, should render services and when prosecuted the patient were permitted to testify that he had been paid. By the mere fact of making an agreement with the client to testify that he had been paid, he would be free from prosecution. The court, even though admitting as true the facts claimed, denies the motion on the theory that said section is not applicable to the instant case."

Evidence was then taken, and the court based thereon rendered judgment in each case sentencing the defendant to pay a fine of $50 and in default of such payment to be confined in jail one day for each dollar left unpaid.

Feeling aggrieved by that judgment, Tomás Collazo Verdejo appealed to this court. He has assigned a single error, thus:

"The defendant considers that the lower court committed error in refusing to order the dismissal of the prosecutions as provided in sections 446 and 169 of the Code of Criminal Procedure in effect."

■ The law that governs this matter in Puerto Rico is contained in sections 445, 446, and 447 of the Code of Criminal Procedure (1935 ed.) which provide:

"Section 445.—When a defendant is held to answer on a charge of misdemeanor, for which the person injured by the act constituting the offense has a remedy by civil action, the offense may be compromised as provided in the next section, except when it is committed:

"1.—By or upon an officer of justice, while in the execution of the duties of his office;

"2.—Riotously;

"3.—With an intent to commit a felony.

"Section 446.—If the party injured appears before the court to which the depositions are required to be returned, at any time before trial, and acknowledges that he has received satisfaction for the injury, the court may, in its discretion, on payment of the costs incurred order all proceedings to be stayed upon the prosecution, and the defendant to be discharged therefrom; but in such case the reasons for the order must be set forth therein, and entered on the minutes. The order is a bar to another prosecution for the same offense.

"Section 447.—No public offense can be compromised, nor can any proceeding or prosecution for the punishment thereof upon a compromise, be stayed except as provided in this chapter."

An examination of the motions presented by Carmen Rodríguez Acevedo to the Municipal Court of San Juan, Second Section, and of the decisions of said court ordering the dismissal, readily show that they do not comply with the requirements of the law. What the complainant stated was that she did not wish to prosecute further because she lacked interest, not that she fully acknowledged having received

satisfaction for the injury caused to her. And the reasons for the order of the court are not stated therein.

 But apart from said deficiencies and even conceding that there was strict compliance with the law, we think that in view of the nature of the offense with which the accused was charged the district court was correct in overruling the motions to quash presented to it.

The sections of our Code of Criminal Procedure which we have transcribed are identical with sections 1377, 1378, and 1379 of the Penal Code of California. In commenting on the first of these sections Pomeroy says:

"By the ancient common law, where a party robbed not only knew the felon, but also took his goods again, or their value, upon an agreement not to prosecute, he was held an accessory: 4 Blackstone's Commentaries, 133. And where any other offense was commited, and a party, without leave of the court, made any composition, or took any money or promise of defendant to excuse him, the act was punishable: 4 Blackstone's Commentaries, 136. The law permits a compromise of any offense, though made the subject of a criminal prosecution, for which offense the injured party might recover damages in an action; but if the offense is of a public nature, no agreement can be valid that is founded on the consideration of stifling a prosecution. Nor can such an agreement be made valid by the court consenting that the prosecution may be compromised: *Keir* v. *Leeman*, 6 Q. B. 308; 2 Bennett & Heard's Leading Criminal Cases, 216." Pomeroy, Penal Code, p. 508.

Corpus Juris in its article on Criminal Law, which comprises all of volume sixteen and the greater part of volume seventeen of said work, in referring to the grounds on which the courts may properly allow a nolle prosequi, mentions as one of them the case where a misdemeanor has been compounded under a statute permitting it. 16 C. J. 435.

Among the cases cited in support of the text appears *State* v. *Hunter*, 14 La. Ann. 71. In said case the Supreme Court of Louisiana, in construing a legal provision in force in said State which prescribed "that in all cases of assault

and battery and misdemeanors, when the parties compromise and the prosecution is withdrawn, . . . it shall be lawful for the Attorney General or District Attorney to enter a nolle prosequi," held that, although the parties had made a compromise, the district attorney was not bound to dismiss the prosecution it being possible to continue the cause to be decided according to the facts and the law as if the compromise did not exist. The court in its opinion said:

"Now, if it were in the power of the offender to compromise with those he had injured, against the wishes of those intrusted with the execution of the criminal law, these very purposes would be defeated. For just in proportion as the offense should be aggravated in that proportion would be the exertions used to bring about a compromise, and deprive the injured laws of their sanction.

"Thus, the offender who is bound for the civil injury as well as the penalty denounced for his misdemeanor, would be enabled to escape punishment by making reparation for the civil injury alone.

"Again, all those misdemeanors and assaults committed by the bold and unscruspulous upon the good-natured, the weak or timid would be wholly unpunished, as such offenders would find no difficulty in procuring, by intimidation or cajolery, evidence of a compromise. It would, therefore, seem that the power to compromise misdemeanors ought not to be left exclusively to the injured party. Thus, if we look at the section with reference to objects of the criminal law, we shall find no difficulty in concluding that the State never intended to part with its control over prosecutions for assaults and battery and misdemeanors. But it sometimes happens, that offenses are committed under such circumstances as imply no real intention of violating the law, and assaults are sometimes made under a misapprehension of facts, and a momentary ebullition of anger, and without much harm to the party injured. In such cases, where the injured party voluntarily comes forward and declares that he is satisfied, and desires the prosecution to be dropped, the public justice gains nothing by a further prosecution, and the law permits the District Attorney to enter the nolle prosequi. On the other hand, the production of a written compromise of an assault and battery by the bully, and the terror of a neighborhood, might be an aggravation of the public injury and a just cause for a more rigorous prosecution in order that there might be an adequate vindication of the laws.

"We have no doubt that the statute in accordance with its very terms is permissive only, and we have no hesitation in affirming .the judgment of the lower court."

The doctrine thus laid down was later confirmed in the case of *State* v. *Frazier,* 52 La. Ann. 1305.

The offense charged in the cases at bar is of such a nature that without any effort it is concluded that its investigation and punishment can not be made to depend on the will of the party injured.

A dentist is a dental surgeon. The practice of dental surgery has lately acquired a remarkable development. It is a true science intimately related to mechanics, medicine, and surgery in general. The degree which authorizes the practice of dentistry is obtained after years of study and practice in colleges and universities. It generally confers the title of doctor. This has given rise to the necessity of regulating the practice of the profession by special laws.

Act No. 75 of 1925 (Session Laws, p. 550) as amended by Act No. 31 of 1929 (Session Laws, p. 198), deals entirely with the regulation of the practice of dental surgery in Puerto Rico. Section 13 of said act, as amended, provides:

"Section 13.—Any person who, not being legally authorized to practice dental surgery, shall practice it or who shall violate the provisions of this Act, shall be guilty of misdemeanor and upon conviction shall be punished by a fine of not less than fifty (50) dollars nor more than two hundred and fifty (250) dollars, or by imprisonment in jail for a maximum term of two years, or by both penalties, in the discretion of the Court; and in case of subsequent offenses punishment shall be thirty days in jail as a minimum and two years in jail as a maximum; and all instruments, implements, medicines and drugs in the possession of any one violating this section, shall be confiscated by competent authority and placed at the disposition of the court; and upon his conviction, the instruments, implements, drugs and medicines so confiscated shall be sold by the marshal at public auction, by order of the competent court, to any person or professional firm authorized to practice dental surgery in Porto Rico, in accordance with the provision of this Act, or to

any commercial house, firm or corporation regularly doing business in such instruments, implements, drugs and medicines.''

The person in connection with whom dental surgery is illegally practiced is not really the party injured or at least the only one injured who may be satisfied with a reimbursement of the money collected from him. Such person may have suffered no harm. He may actually have received a benefit. The offense is really committed against society in general, which through its constitued authorities, has decided to regulate the practice of the profession. And it is the violation of such regulation, deemed proper and necessary for the orderly performance of this social activity, which is punished. In order to impose the punishment no inquiry need be made as to whether the work performed on the person mentioned in the complaint was properly done or not. Perhaps it was done in the best scientific manner, and yet, if it was performed by someone without a license, a violation would have always been committed. That is the reason for the predominant public nature of the offense which prevents the application to it of the provisions of the Code of Criminal Procedure relating to the compromise of misdemeanors by the parties.

Moreover, the law itself provides that all instruments, implements, medicines, and drugs in possession of the offender shall be confiscated and upon conviction of the accused, shall be sold by the marshal in the manner and to the person prescribed by the same law. And how could the Government execute that provision of the law if the enforcement thereof were left to the discretion of the particular person on which the dental surgery was illegally performed?

■ Reference is also made in the assignment of error to section 169 of the Code of Criminal Procedure:

''Section 169.—When the defendant is convicted or acquitted or has been once placed in jeopardy upon an information, the conviction, acquittal, or jeopardy is a bar to another information for

the offense charged in the former or for an attempt to commit the same or for an offense necessarily included therein of which he might have been convicted under that information."

None of these situations which the lawmaker had in mind is presented herein. As the action of the Municipal Court of San Juan, Second Section, was completely void, it can not be invoked. It is as if it did not exist.

In the case of *State* v. *Bates,* 61 Pac. 905, 83 Am. St. Rep. 768, 772, the Supreme Court of Itah said:

"A void judgment is really no judgment. It leaves the parties litigant in the same position they were in before the trial. It leaves them in exactly the same position as if no trial had taken place. Such a judgment confers authority upon no one to enforce it. 'A void judgment,' says Mr. Black, 'is in reality no judgment at all. It is a mere nullity. It is attended by one of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever; it has no effect as a lien upon his property; it does not raise an estoppel against him. As to the person in whose favor it professes to be, it places him in no better position than he occupied before; it gives him no new right, but an attempt to enforce it will place him in peril. As to third persons, it can neither be a source of title, nor an impediment in the way of enforcing their claims. It is not necessary to take any steps to have it reversed, vacated, or set aside. But, whenever it is brought up against a party, he may assail its pretensions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action, direct or collateral.' Black, Judgm. sec. 170. In the present case all the proceedings of the trial court after the defendant had entered his plea were wholly void, because the court, in the absence of a lawful jury, had no jurisdiction to try the cause; and therefore its sentence and judgment were mere nullities, and the affirmance of the judgment by the supreme court could not make them valid. That judgment therefore could be held and treated as a nullity whenever, wherever and by whomsoever used or relied upon as a valid judgment."

As the error assigned was not committed, the appeals must be dismissed and the judgments appealed from affirmed.